**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**REGINA D'ANNA,**

      **Plaintiff,**

**-vs-**                    **Case No. 6:08-cv-1640-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, the administrative decision is **REVERSED and the matter is REMANDED** for additional proceedings.

### *PROCEDURAL HISTORY*

Plaintiff applied for a period of disability and Disability Insurance Benefits on July 1, 2005, alleging an onset of disability as of December 31, 2004 (R. 15, 87, 90).[1] Plaintiff's claim was denied initially and upon reconsideration (R. 15, 42-46), and she sought and received a hearing before an administrative law judge ("the ALJ") (R. 15, 382-408). On October 12, 2007, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled (R. 12-24).

On July 25, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 5-8), making the ALJ's decision the final decision of the Commissioner. This action for

---

[1] Plaintiff originally asserted an onset date of February 21, 1999 (R. 65), which she later amended to January 31, 2004 (R. 48). Although the record is not clear as to when and why the onset date was changed to December 31, 2004 (*see* unsigned report at R. 87, 90), this does not seem to be an issue as Plaintiff's brief also relies on the December 31, 2004 onset date (Doc. No. 11 at 2).

review timely followed (Doc. No. 1). The parties have briefed the issues and consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter is now ripe for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to anxiety, panic attacks, major depression, agoraphobia, stroke, Epstein-Barre, and digestive disorders (R. 17, 65).

*Summary of Evidence Before the ALJ*

Plaintiff was forty-seven years old at the time of her alleged onset of disability, and fifty years old at the time of the decision (R. 65, 385), with a college education and past relevant work experience as a legal secretary/court clerk (R. 387), a real estate agent, and as a receptionist for her husband's company (R. 56, 386-88).

The medical evidence pertinent to the claim is set forth in the ALJ's decision and, in the interests of privacy and brevity, will not be repeated here, except to the extent necessary to address Plaintiff's objections. By way of summary, the medical record indicates that Plaintiff sought and received treatment for mental illness from a variety of providers.[2] The record also includes opinions from both examining and non-examining state agency consultants. Plaintiff completed numerous forms and reports, and appeared and testified at her administrative hearing. No Vocational Expert testified.

Upon review of the evidence, the ALJ determined that Plaintiff had the severe impairment of bipolar disorder, and neither party disputes that finding, which is amply supported by the medical evidence of record. The ALJ then determined that Plaintiff's bipolar disorder did not meet or equal

---

[2]While some of the treatment records pre-date the onset date (Dr. Linet–1997-1999; Dr. Peselow– 2001 to June 2004), the record also includes notes of the treating psychiatrists for the pertinent time period: Dr. John McCarthy and Dr. James Jacobson.

-2-

a Listed impairment (R. 17-18), and Plaintiff retained the residual functional capacity ("RFC") to perform light work, with certain limitations against climbing ladders, ropes or scaffolds and working with hazardous machinery or exposure to heights (R. 20). The ALJ also found that Plaintiff was limited "to simple, routine work with 1, 2 or 3 step tasks, not in close proximity to co-workers or the general public." (R. 20). In formulating the RFC, the ALJ discounted certain opinions of the treating and consultative physicians and rejected Plaintiff's subjective complaints that she suffers disabling symptoms (R. 18-22). The ALJ determined that Plaintiff could not perform her past relevant work and, relying exclusively on the Medical Vocational Guidelines, found that Plaintiff was not under a disability (R. 22-24).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff asserts that the administrative decision must be reversed in that: 1) the ALJ improperly rejected the opinion of the treating psychiatrist, and portions of the opinions of the consultative psychologist and the consultative neurologist; 2) Plaintiff's credibility determination is not supported by substantial evidence; and 3) the ALJ erred in relying exclusively on the Medical-Vocational Guidelines.

### *Evaluating Opinions*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, Plaintiff asserts that the ALJ's formulation of the RFC is flawed in that he did not credit the opinion of Dr. McCarthy, the treating psychiatrist, and failed to fully credit the opinions of two of the consultative examiners.

*Dr. McCarthy*

Dr. McCarthy treated Plaintiff from October 2004 to approximately March 2005 (R. 227-29).[3] In the initial October 8, 2004, exam, Plaintiff presented with a history of mood swings, but had never been hospitalized and it was noted that "when [she is] on meds she is pretty stable." (R. 228). Mental status exam revealed "pressured speech, casual dress, some tangentiality, distracted, slight hypomania," and Dr. McCarthy assessed a Global Assessment of Functioning (GAF) score of 51 (R.

---

[3] Plaintiff last saw Dr. McCarthy in February 2005, as that is the date of the last treatment note, although it appears that he may have prescribed medications for her in May 2005 (R. 226-27).

-5-

229), which indicates moderate mental symptoms.[4] Diagnoses included bipolar II, hypomania; hypochondrias; and anxiety NOS. *Id.* Plaintiff was depressed on her next visit, but Plaintiff's mood had improved by February 8, 2005 (R. 227).

Dr. McCarthy apparently left on extended medical leave from March 2005 until his office closed on August 31, 2005 (R. 225). An unidentified person associated with Dr. McCarthy's office completed a questionnaire dated August 8, 2005, purporting to address Plaintiff's mental limitations and opining as to significant limitations (R. 218-25). The ALJ noted the document in his decision, but gave it no weight because the form was completed and signed by someone other than the doctor; and the opinion regarding marked limitations was inconsistent with Dr. McCarthy's treatment notes and the opinion and notes of Dr. Jacobson (R. 18-19). This finding is supported by substantial evidence.

At best, the conclusions in the questionnaire is an opinion from an unknown person who may or may not be a qualified health care provider[5] as to what he or she *believes* might be the opinion of Dr. McCarthy. Plaintiff's contention that there is "no reason to believe that the report prepared for Dr. McCarthy on the basis of his treatment notes does not accurately reflect the doctor's opinions" misses the mark. There is no reason to believe that the report *does* accurately reflect Dr. McCarthy's opinion, nor any reason to conclude that it was prepared "for" Dr. McCarthy. This is not a case where the doctor directs a staff member to sign a report he has dictated, nor a case where the doctor adopts by his signature a report prepared by someone else. Indeed, there is nothing in this form to suggest that Dr. McCarthy had anything whatsoever to do with the completion of the report. As such, it is not

---

[4] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text revision 2000) (DSM-IV-TR).

[5] There is nothing to indicate whether the person is a nurse, physician's assistant, file clerk or other office worker.

-6-

an "opinion" from a treating physician, nor from an acceptable medical source entitled to any significant weight. There is no error in discounting it.[6]

*Dr. Seifer*

On November 22, 2005, Plaintiff was examined at the request of the Commissioner by psychologist Ronald Seifer, Ph.D. (R. 260-62). Dr. Seifer noted that he reviewed no medical records and "the patient served as the informant" (R. 260). On mental status examination, Dr. Seifer found Plaintiff to be "dramatic" with an attitude of forced cooperation (R. 261). Motor activity was "tense"and affect was labile; she had difficulty with math calculations and some memory difficulty, and judgment and insight into the nature of her problems appeared to be partial. *Id.* Dr. Seifer concluded that Plaintiff had bipolar disorder, obsessive compulsive disorder and a personality disorder with hysteroid features and that she appeared to have moderate to marked restrictions in her activities of daily living ("ADL") and in maintaining concentration, persistence, or pace, and marked difficulties in social functioning, noting however that further assessment would be needed for a better diagnosis (R. 262).

The ALJ rejected Dr. Seifer's opinions concerning the marked limitations in Plaintiff's ADLs and social functioning because he found them based solely on Plaintiff's subjective reports and behavior, which the ALJ found lacked credibility (R. 19). Plaintiff objects to this finding as being without legal or factual foundation. In response, the Commissioner notes that there are no objective findings in the exam that address Plaintiff's ADL or social functioning, and "there is nothing even Plaintiff herself reported concerning her ADL" (Commissioner's Brief at pg. 9). The Commissioner also argues that the assessment is inconsistent with other evidence of Plaintiff's ADL, and the recent

---

[6]Moreover, as argued by the Commissioner, the marked limitations found in the report are inconsistent with the GAF finding and the moderate symptoms found by both Dr. McCarthy (R. 227-29) and Dr. Jacobson (R. 219, 221-23, 253).

medical evidence (*See* treatment notes at R. 315-17- showing GAF scores of 70 and 90 and normal mental status exams).

The Court agrees with Plaintiff that *if, in fact,* the ALJ's sole basis for discrediting the opinion is that it is based on Plaintiff's subjective reports and behavior, that reason is not supported by substantial evidence. By its very nature, mental illness often shows itself *only* in subjective reports and behavior. There are no x-rays or MRI's pertinent to the diagnosis and psychological testing and the mental status exam are dependent on a patient's responses and the trained consultant's observations of the patient's behavior.

Moreover, as stated by the Commissioner, Plaintiff herself reported nothing concerning her ADL at the evaluation, and the consultant did not review any other records. That being the case, the ALJ could not have properly discredited the ADL findings as being based on Plaintiff's own subjective reports, as none were presented. The reason offered for failing to credit the opinion is inadequate.

Although the Commissioner offers several other reasons that could well justify discounting the opinion, the fact remains that these were not the reasons cited by the ALJ. Such *post hoc* speculation is not sufficient. Remand for additional consideration is required.[7]

*Dr. Cooper*

Plaintiff was examined by Dr. Cooper, a neurologist, at the request of Defendant (R. 255-59). As summarized by Plaintiff in her brief, physical examination revealed no abnormalities save some thoracic and lumbar scoliosis (R. 256-58). On commencement of neurological and higher cortical

---

[7]In finding that the ALJ must reconsider the opinion of Dr. Seifer, the Court does not find that his opinion is entitled to great weight or is otherwise more persuasive than the other evidence, including the evidence tending to show that Plaintiff's condition waxed and waned throughout the period at issue. It is for the ALJ to weigh the evidence. The Court holds only that the reason given for failing to credit the opinion was not supported by substantial evidence and thus additional review is necessary.

-8-

functions testing, Plaintiff was "quite emotional" and requested that the examination be conducted quickly so that she could return home (R. 258). She had a slightly blunt affect, but Plaintiff showed logical thought processes, no hallucinations or delusions, intact memory, adequate fund of knowledge, and no history of suicidal or homicidal ideation (R. 258). Dr. Cooper diagnosed probable anxiety with depression and bipolar disorder with probable agoraphobia, and "multiple bodily complaints without any objective findings." (R. 259). He opined that "she would have significant difficulties with work-related mental activities in the usual productive workplace as far as sustained concentration and persistence, social interaction and adaption would be concerned" and no significant physical deficits on an objective basis. *Id.* Plaintiff contends that the ALJ "total[ly] disregard[ed] . . . the most pertinent aspects of Dr. Cooper's report" in acknowledging only the portion of the report related to the physical findings.

The ALJ summarized the examination, as noted above, including the mention of difficulty with concentration and social interaction, and stated "[t]his opinion is credited here." (R. 21-22). Plaintiff does not explain how these conclusions were "ignored." To the extent Plaintiff is contending that this opinion creates limitations greater than those reflected in the RFC, the Court rejects this contention. As pointed out by the Commissioner, this was a one time examination by a neurologist, *not* a psychiatrist, and the diagnoses included "probable" agoraphobia. There is no basis for according the mental limitations felt to be present controlling weight and, in any event, the RFC specifically incorporated the limitations noted (difficulty with social interaction and concentration) by limiting Plaintiff to simple routine work not in close proximity to co-workers or the general public. No error is apparent.

*Credibility*

With respect to non-exertional limitations, Plaintiff contends that her mental illness limits her ability to perform work. At issue, then, is whether the ALJ properly evaluated Plaintiff's allegations of fatigue and limitations resulting from her mental illness.

Where an ALJ decides not to credit a claimant's testimony about non-exertional limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective testimony requires that the testimony be accepted as true. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ found that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the effects of the symptoms are not entirely credible (R. 21). The ALJ found the level of "histrionic behavior" at the consultative examinations and at the hearing to be "contrived" and not believable. The ALJ noted that Plaintiff alleged panic attacks and disabling fatigue, but found that these conditions were not reflected in treatment notes, which indicated that her mental condition was "relatively stable with medication but with recurrent mood swings." *Id.* The ALJ also cited to recent treatment notes from Plaintiff's treating psychiatrist indicating that medication had been helpful and Plaintiff was doing well, was much less anxious and was able to participate in activities again, with no other complaints. *Id.* In large measure, these statements are supported by substantial evidence. (*See* R. 227-8, 252-54, 315-17, 324, 327, 333).

While Plaintiff contends that she did report panic attacks and fatigue to her doctors, she cites to records that, for the most part, long precede the onset date asserted here (Doc. No. 11 at 15-16).

-10-

As pointed out by the Commissioner, the most recent medical records show unremarkable visits with high GAF scores. Plaintiff's treating psychiatrist and family physician did not find Plaintiff's condition to be as severe as she alleged. While the Court agrees with Plaintiff that the histrionic behavior complained of by the ALJ is, indeed, a symptom of the disorder and not necessarily "contrived," this is not enough to warrant rejection of the credibility finding as a whole, as the ALJ properly articulated other specific reasons for his credibility determination, and these reasons are supported by substantial evidence.

### *The failure to hire a VE*

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational

-11-

expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Here, Plaintiff was found to be limited to simple, routine work consisting of no more than one-, two- or three-step tasks, without close proximity to co-workers or the general public (R. 20-22). These limitations are non-exertional in nature. In finding Plaintiff not disabled at step five of the sequential analysis,[8] the ALJ determined that the body of unskilled work, by its very nature, would accommodate the assessed non-exertional limitations (R. 23) as "unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people," and they generally provide substantial vocational opportunities (R. 23, citing Social Security Ruling ("SSR") 85-15). No vocational expert testimony was sought or presented, and the ALJ relied exclusively on the Medical-Vocational Guidelines in finding Plaintiff to be not disabled.

In determining that reliance on the grids was appropriate, the ALJ cited to SSR 85-15, which states, among other things:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the

---

[8]The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

> transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to *respond appropriately to supervision, coworkers, and usual work situations*; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.
>
> * * *
>
> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base *for persons who can meet the mental demands of unskilled work.* These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments *who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.*

SSR 85-15, found at 1985 WL 56857, *4 (emphasis added).

As defined by the Commissioner in the Ruling, the basic mental demands include the ability to respond appropriately to supervision, coworkers and usual work situations. Plaintiff contends that she does not meet the basic mental demands due to her limitation of work that is not in close proximity to co-workers or the general public. The Commissioner contends that this is "wholly separate" from Plaintiff's limitation but cites no cases to support that contention, noting only that "per SSR 85-15, unskilled work involves dealing with data instead of people" and thus "when performing unskilled work, if an individual is not dealing with people in the first instance, it necessarily follows that unskilled work does not involve working in close proximity to people." The Commissioner concludes that "the non-exertional limitations found by the ALJ would not prevent Plaintiff from performing a wide range of work, and thus, the ALJ properly used grid rules 202.14 and 202.21 to find Plaintiff was not disabled." (Doc. No. 14 at 18-19).

While it is true that some unskilled jobs involve dealing primarily with objects and not people, the Ruling makes clear that these jobs provide substantial vocational opportunity *for those persons who retain the capacity to meet the mental and emotional demands of such jobs on a sustained basis*. At issue here is whether Plaintiff retains that capacity. Under Plaintiff's interpretation, her limitation precludes the ability to respond appropriately to people; under the Commissioner's interpretation, the limitation is merely a matter of geography. While the record is not sufficient for the Court to determine whether the Commissioner's current interpretation was the basis for the ALJ's finding, assuming it to be so, the Court finds the Commissioner's position to be unpersuasive in that it fails to recognize the reason for the limitation.[9] The Court finds that any implicit conclusion that Plaintiff's non-exertional limitation does not erode the vocational base is unsupported by substantial evidence. At the very least, a Vocational Expert must be retained to opine as to the vocational effect of this limitation.

## CONCLUSION

For the reasons set forth above, the administrative decision is **REVERSED and the natter REMANDED** for additional proceedings not inconsistent with this Opinion. The Clerk is directed to enter judgment accordingly, and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 29, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[9] Absent evidence of a contagious disorder, the only possible basis for such a limitation is that it is necessary due to Plaintiff's difficulties in interacting with people.